**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Criminal Case No. 14-cr-00531-LKG |
| | ) |
| QUINTIN ANTONIO BELL, | )   Dated:  October 15, 2024 |
| | ) |
| Petitioner/Defendant *pro se*. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER ON**
**THE PETITIONER'S MOTION FOR COMPASSIONATE RELEASE**

## I.      INTRODUCTION

Petitioner, Quintin Antonio Bell, has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 135.  The motion is fully briefed.  ECF Nos. 135, 145, 147. The Government has also filed a motion to seal certain exhibits to its response in opposition to the Petitioner's motion.  ECF No. 146.  No hearing is necessary to resolve these motions.  *See* L.R. 105.6 (D. Md. 2023).   For the reasons that follow the Court: (1) **DENIES** the Petitioner's motion for compassionate release and (2) **GRANTS** the Government's motion to seal.

## II.  BACKGROUND AND PROCEDURAL HISTORY[1]

The Petitioner is currently serving a 480-month sentence of imprisonment at USP Atwater, following his conviction for drug and firearm offenses at a jury trial in 2015.  ECF Nos. 1, 70, 100, 101, 147.  As background, on November 12, 2014, the Petitioner was charged in a four-count Indictment with: (1) possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) (Count 1); (2) possession with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 2); (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ( Count 3); and (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4).

---

[1] The facts recited in this memorandum opinion and order are derived from the Presentence Investigation Report (ECF No. 79) and the Government's response in opposition to the Petitioner's motion for compassionate release (ECF No. 145).

ECF No. 1.  The offenses charged in the Indictment occurred from on or about April 10, 2014, through on or about August 29, 2014, in the District of Maryland.  *Id.*

Following a jury trial, the Petitioner was found guilty of all four counts of the Indictment on November 18, 2015.  ECF No. 70.  And so, on May 2, 2016, the Court sentenced the Petitioner to a mandatory minimum term of imprisonment of 480 months (180 months as to Counts 1, 2 and 3 to run concurrently; 300 months as to Count 4 to run consecutive to Counts 1, 2 and 3), followed by five-year term of supervised release.  ECF Nos. 100, 101.

<u>The Offenses</u>

On April 9, 2014, a task force from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"), consisting of federal and state law enforcement officers, obtained a "no-knock" warrant from the Circuit Court of Prince George's County, Maryland, to search 5404 Morton Place in Riverdale, Maryland and to seize from the house any narcotics, firearms and related items found.  ECF No. 145 at 3-4.  The probable cause for the warrant was based on the affidavit of ATF Special Agent Frank Oliver, who had learned from a confidential informant that the Petitioner was "utilizing the residence to sell and store large quantities of Heroin while armed with a firearm."  *Id*. at 4.

On April 10, 2014, Officers of the Prince George's Police Department made a forced entry into 5404 Morton Place to execute the warrant.  *Id*.; ECF No. 79 at ¶ 4.  While performing a security sweep, the officers found the Petitioner in the basement and placed him in handcuffs.  ECF No. 79 at ¶ 5; ECF No. 145 at 4.  After the house was secured, Agent Oliver entered the living room and, knowing that the Petitioner's wife, Stacy Bell, was the owner of the house, informed her "that [he] had a narcotics search warrant for the home" and then asked her, in the interest of officer safety, "if there [were] any weapons in the house that would hurt an officer."  ECF No. 145 at 4.  Before his wife could respond, the Petitioner interjected and stated that "there was a gun under the couch" next to them and that "a friend had given him the gun [after] somebody had tried to break into the house and rob him."  *Id*.; ECF No. 79 at ¶ 5.  And so, the officers then searched under the living-room couch and recovered a Mini-14 Ruger semi-automatic rifle.  ECF No. 79 at ¶ 5; ECF No. 145 at 4.

The ATF task force also recovered evidence of drug trafficking in the basement of the house, including: approximately 112 grams of heroin, a digital scale, empty pill capsules, a capsule-filling device and bottles of cutting agents.  ECF No. 79 at ¶ 4; ECF No. 145 at 4.  The

Officers also found a loaded rifle magazine that was compatible with the Mini-14 Ruger rifle. ECF No. 79 at ¶ 5; ECF No. 145 at 4.

In addition, in an upstairs master bedroom, the Officers found several more grams of heroin, another scale, approximately $2,000 in cash, a letter addressed to the Petitioner and the Petitioner's driver's license.  ECF No. 79 at ¶ 6; ECF No. 145 at 4.  In a separate bedroom, the Officers also found approximately $10,000 in cash and a collection of jewelry.  ECF No. 79 at ¶ 6; ECF No. 145 at 4.  Upon completion of the search, the ATF task force released the Petitioner from custody pursuant to the "request of another [law enforcement] agency."  ECF No. 145 at 4.

On August 24, 2014, officers of the Metropolitan Police Department of the District of Columbia received a tip, which led them to investigate a parked car in Southeast Washington, DC.  *Id*.  The Petitioner was in the car and was accompanied by two other individuals.  *Id*. at 4-5. As the officers approached, the Petitioner opened his door and attempted to exit, but he was apprehended.  *Id*. at 5; ECF No. 79 at ¶ 11.  The officers found a loaded Glock pistol next to the driver's seat, where the Petitioner had been sitting, and approximately $1,000 in cash on the Petitioner's person.  ECF No. 79 at ¶¶ 11-12; ECF No. 145 at 5.  The officers also found several small baggies of marijuana, heroin and crack cocaine in the car's center console.  ECF No. 79 at ¶ 12; ECF No. 145 at 5.

After the MPD officers brought the Petitioner to the police station, a detective advised him of his *Miranda* rights and then interviewed him.  ECF No. 145 at 5.  During the interview, which was recorded by video, the Petitioner stated that: (1) he had been "sharing" the Glock pistol with another man in the car; (2) the two of them had been "hustlin[g] together" when they were arrested; (3) he had come to Washington, DC, that evening to buy "two guns and some coke;" and (4) he was expecting to buy "two Rugers."  *Id*.; ECF No. 79 at ¶ 12.  The Petitioner was charged in the Superior Court of the District of Columbia with several offenses relating to this incident; but the Government later dismissed the charges.  ECF No. 145 at 5.

On August 29, 2014, the ATF task force executed a second search warrant at 5404 Morton Place.  *Id*.  The probable cause for this warrant was based on the Petitioner's Washington, DC arrest, the evidence from the initial search in April 2014 and a confidential informant's assertion that the Petitioner was "storing quantities of heroin within [the] residence . . . consistent with distribution amounts."  *Id*. (ellipsis in original); ECF No. 79 at ¶ 15.  During this search, the officers found 14 grams of heroin, three grams of crack cocaine in the basement

and baggies marked with green dollar signs and blue devil faces.  ECF No. 145 at 5.  The officers also recovered other evidence of drug trafficking, including digital scales, bottles of cutting agent and handgun ammunition hidden inside a crockpot.  *Id*.; ECF No. 79 at ¶ 15.

On November 18, 2015, a jury in the District of Maryland convicted the Petitioner of: (1) possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) (Count 1); (2) possession with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 2); (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ( Count 3); and (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4).   ECF No. 70.

<u>The Sentencing Hearing</u>

The Court held a sentencing hearing on May 5, 2016.  ECF No. 100.  At the conclusion of the hearing, the Court sentenced the Petitioner to a mandatory minimum term of imprisonment of 480 months (180 months as to Counts 1, 2 and 3 to run concurrently; 300 months as to Count 4 to run consecutive to Counts 1, 2 and 3), followed by five-year term of supervised release.  *Id*.; ECF No. 101.

At the time of sentencing, Petitioner had previous criminal convictions for:

- Robbery with a Deadly Weapon and Use Handgun During Crime of Violence, in the Circuit Court of Maryland for Prince George's County; Docket No.: CT850006A (sentenced May 22, 1985);
- Robbery with a Deadly Weapon and Use a Handgun During a Crime of Violence, in the Circuit Court of Maryland for Prince George's County; Docket No.: CT850007A (sentenced May 22, 1985);
- Assault with a Deadly Weapon, Possession of a Firearm During a Crime of Violence, and Carrying a Pistol without a License, in the Superior Court for the District of Columbia; Docket No.: 1990-FEL-008982 (sentenced April 10, 1991);
- Possession with Intent to Distribute - Cocaine Base and Prisoner in Possession of Marijuana, in the United States District Court for the Eastern District of Virginia; Docket No.: 91-00212-A (sentenced September 13, 1991);
- Possession of Prohibited Object by Federal Inmate, in the United States District Court for the Western District of Pennsylvania; Docket No.: 00-00006-001-J (sentenced April 24, 2000);
- Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in the United States District Court for the District of Columbia; Docket No.: 03-CR-169 (sentenced February 2, 2006); and
- CDS Possession - Not Marijuana, in the Circuit Court of Maryland for Prince George's County; Docket No.: CA107298 (sentenced February 25, 2011).

ECF No. 79 at ¶¶ 38-45.  Given this, the Petitioner qualified as an Armed Career Criminal and a Career Offender for sentencing purposes.  *Id.* at ¶¶ 48–49.

The Petitioner appealed his conviction and sentence on May 11, 2016.  ECF No. 102.  On appeal, the Petitioner argued the Court erred: "(1) in denying his motion to suppress statements he made to officers executing a search warrant for his residence; (2) in admitting "other acts" evidence under Federal Rule of Evidence 404(b); (3) in denying his motion to disclose the identity of a confidential informant who provided information used to obtain the search warrant; and (4) in enhancing his sentence on the basis of his prior convictions."  *United States v. Bell*, 901 F.3d 455, 459 (4th Cir. 2018).  On August 28, 2018, the United States Court of Appeals for the Fourth Circuit denied the Petitioner's appeal and affirmed his conviction.  *Id*. at 472; ECF No. 124.

The Petitioner's Medical Records

Relevant to the pending motion, the Petitioner is currently incarcerated at USP Atwater located in Merced County, California, and he is classified by the Bureau of Prisons ("BOP") as Care Level 1 for medical and mental health treatment.  ECF No. 147 at 1.  This is the lowest level of medical and mental health care classification, which covers generally healthy inmates with limited medical needs that can be easily managed by clinical evaluation every 6-12 months, including well-controlled hypertension.  *See Care Level Classification For Medical And Mental Health Conditions Or Disabilities*, Federal Bureau of Prisons Clinical Guidance (May 2019), at 2, available at: https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.  The Petitioner is prescribed lisinopril and hydrochlorothiazide to manage his blood pressure.  ECF No. 147-2 at 1; ECF No. 147-3 at 1.

Relevant to the pending motion, the Petitioner's medical records show that his blood pressure has been successfully managed by the BOP during his incarceration.  *See generally* ECF No. 147-3; *see also* ECF No. 147-4 at 1 (showing that the Petitioner's blood pressure screening on May 12, 2023 was 116/68, which is within the normal range).  The Petitioner is also prescribed aspirin and atorvastatin for heart protection and for high cholesterol (hyperlipidemia).  ECF No. 147-3 at 1.  The Petitioner's medical records also indicate that he has not reported any heart issues in the last several years.  *See* ECF No. 147-4.  Lastly, the Petitioner's medical records show that he received the first and second doses of the Covid-19 vaccine on April 27, 2021, and May 25, 2021, respectively.  ECF No. 147-5 at 1-2.

On October 5, 2021, the Petitioner filed a motion for compassionate release.  ECF No. 135.  On May 17, 2024, the Government filed a response in opposition to the Petitioner's motion.  ECF Nos. 145, 147.  On May 17, 2024, the Government also filed a motion to seal certain exhibits to its response in opposition to the Petitioner's motion.  ECF No. 146.

The Petitioner's motion for compassionate release having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Compassionate Release

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]"   18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).   But "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).   One such exception to this rule is when the modification is "expressly permitted by statute."   18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

In this regard, Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence.   *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020).   Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  *Id*.  The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).   But, in December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018). Given this, the Court has held that, as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.   *Wiggins*, 2020 WL 4436373, at *2.   And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate

release.  *Id*.

Pursuant to Section 3582(c)(1)(A), the Court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. at *3.   And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13.   *Id*.

The Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A).   28 U.S.C. § 994(t).   Relevant to the pending motion, the Commission has issued a policy statement that includes the following "extraordinary and compelling" reasons for compassionate release eligibility: (1) the medical circumstances of the defendant; (2) the advanced age of the defendant; (3) the defendant's family circumstances; (4) where the defendant was a victim of abuse while in custody; (5) any combination of the reasons set forth at (1) through (4); and (6) where the defendant received an unusually long sentence.  U.S.S.G. §§ 1B1.13(b)(1)-(6).  The Commission's policy statement also provides that, for a defendant's medical circumstances to qualify as an "extraordinary and compelling" reason for compassionate release, one of the following must apply:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.

(B) The defendant is—(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority; (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot de adequately mitigated in a timely manner.

U.S.S.G. §§ 1B1.13(b)(1).  And so, a defendant's increased risk of suffering complications or death from exposure to disease during a public health emergency can be an extraordinary and compelling reason for release.

## IV.    ANALYSIS

The Petitioner seeks compassionate release upon the grounds that: (1) his age and health conditions put him at risk of serious adverse health complications following a Covid-19 infection and (2) his sentence should be reduced due to a "legal error" that tainted his trial. ECF No. 135.  And so, the Petitioner requests that the Court reduce his sentence.   *Id*. at 6.

The Government opposes the Petitioner's motion upon the grounds that: (1) he has not exhausted administrative remedies; (2) he has not shown extraordinary and compelling reasons

to warrant a reduction of sentence; and (3) the Section 3553(a) factors do not support compassionate release.  ECF No. 145.  And so, the Government requests that the Court deny the Petitioner's motion.  *Id*. at 17.

For the reasons that follow, the Petitioner has not shown that he exhausted administrative remedies before directly petitioning the Court for compassionate release.  The Petitioner has also not shown an extraordinary and compelling reason to warrant compassionate release.  Lastly, the Government has shown that it is necessary and appropriate to seal certain exhibits to its response in opposition to the Petitioner's motion, because these documents contain sensitive and/or confidential information related to the Petitioner.  And so, the Court DENIES the Petitioner's motion for compassionate release and GRANTS the Government's motion to seal.

### A.  The Petitioner Has Not He Exhausted Administrative Remedies

As an initial matter, the Petitioner has not shown that he exhausted his administrative remedies before directly petitioning the Court for compassionate release.  Pursuant to 18 U.S.C. § 3582(c)(1)(A) , as amended by the First Step Act, the Court may reduce the Petitioner's sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020).  And so, once the Petitioner has exhausted his administrative remedies, he may petition this Court directly for compassionate release.  *Id*.

In this case, the Petitioner states that he exhausted administrative remedies with the BOP.  ECF No. 135 at 2.  The Petitioner has also submitted certain exhibits that contain information to support his motion.  ECF No. 135-1.  But the documents provided by the Petitioner neither show that he made a request for compassionate release to his Warden, nor that the Warden at USP Atwater denied such a request.  *See generally* ECF Nos. 135-1; 140.

Given this, the Petitioner has not shown that he has satisfied the first statutory requirement for compassionate release under Section 3582(c)(1)(A).  And so, the Court must DENY his motion.

**B.  The Petitioner Has Not Shown An Extraordinary
And Compelling Reason For Compassionate Release**

A careful reading of the Petitioner's motion for compassionate release also makes clear that he has not demonstrated an extraordinary and compelling reason to warrant compassionate release.  The Commission has issued a policy statement which provides, among other things, that a defendant's medical circumstances and advanced age can constitute "extraordinary and compelling" reasons for compassionate release eligibility.  U.S.S.G. §§ 1B1.13(b)(1)-(2).  Relevant here, this policy statement provides that, for a defendant's medical circumstances to qualify as an "extraordinary and compelling" reason for compassionate release, one of the following must apply:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.

> (B) The defendant is—(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

> (D) The defendant presents the following circumstances—(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority; (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (iii) such risk cannot de adequately mitigated in a timely manner.

U.S.S.G. §§ 1B1.13(b)(1).  And so, if substantiated by the evidence, the Petitioner's increased risk of suffering complications or death from exposure to disease during a public health emergency can be an extraordinary and compelling reason for his release.  *Id*.

In this case, the Petitioner alleges, and his medical records show, the Petitioner suffers from high blood pressure, a "heart condition" and high cholesterol.  ECF No. 135 at 4.  The Petitioner also argues that these health conditions put him at an increased risk of an adverse health outcome following a Covid-19 infection.  *Id*.

The extraordinary relief of compassionate release, based upon a defendant's medical conditions, is, however, only appropriate when the Petitioner: (1) is suffering from an advanced terminal illnesses; (2) has a health condition that cannot be managed or remediated while he is incarcerated and that impacts his ability to provide self-care; (3) has a medical condition that requires long-term or specialized care that is not being provided by the BOP; or (4) has an emergency medical condition arising from large-scale infectious disease outbreaks like the Covid-19 pandemic.  *See* U.S.S.G. § 1B1.13(b)(1).  Such circumstances are not present here.

Rather, the Petitioner's medical records show that he is a medical and mental health Care Level 1 inmate, which is the lowest level of risk in according to the BOP.  ECF No. 147 at 1.  The Petitioner's medical records also make clear that he has received adequate treatment for his health conditions while incarcerated.  *See generally* ECF No. 147-3.  Given this, the Court agrees with the Government that the Petitioner's health conditions do not constitute extraordinary and compelling reasons to warrant compassionate release under U.S.S.G. § 1B1.13(b)(1).

While understandable, the Petitioner's concern that his health conditions place him at increased risk of adverse health consequences due to Covid-19 is also not an extraordinary and compelling reason to warrant compassionate release.  As this Court has recognized, the Covid-19 pandemic has had a "material" impact on public health.  *United States v. Williams*, 2020 WL 1434130, at *2 (D. Md. Mar. 24, 2020).  But, on May 11, 2023, the President and the Centers for Disease Control and Prevention issued a proclamation declaring that Covid-19 is no longer a national pandemic due to advancements in developing a vaccine, which has led to lower contraction and infection rates. *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html.  Given this, the Petitioner is at no greater risk from Covid-19 than other inmates and members of the general public who have similar underlying health conditions.  And

so, the Petitioner has not shown extraordinary and compelling reasons for compassionate release based upon his health conditions and the Covid-19 pandemic.

The Petitioner's argument that compassionate release is warranted, due to an alleged "legal error" that occurred during his trial, is equally unavailing. The Petitioner argues that the Court erred by admitting certain statements that he made regarding a firearm during his trial. ECF No. 135 at 4 (arguing that there was "a '[*M*]*iranda*' issue [in] his case" and that he objected to the firearm that was found by law enforcement and related incriminating statements made by the Petitioner to being admitted into evidence). But the Fourth Circuit has previously considered and rejected this argument during the Petitioner's appeal of his conviction and sentence. *See United States v. Bell*, 901 F.3d, 455, 464 (4th Cir. 2018) (affirming denial of motion to suppress).

It is also well-established in this Circuit that the Petitioner's "compassionate release motion cannot be used to challenge the validity of [his] conviction or sentence." *United States v. Ferguson*, 55 F.4th 262, 272 (4th Cir. 2022). And so, the "legal error" alleged by the Petitioner is not a proper basis for seeking or granting compassionate release.

### C.  The Court Grants The Government's Motion To Seal

As a final matter, the Court GRANTS the Government's motion to seal certain exhibits to its response in opposition to the Petitioner's motion for compassionate release, because these exhibits contain sensitive and/or confidential information relating to the Petitioner. ECF Nos. 147-1, 147-2, 147-3, 147-4, 147-5. The subject exhibits contain disciplinary and health records of the Petitioner, including the Petitioner's BOP disciplinary and immunization records. *Id*. Given this, the public release of these documents would harm the Petitioner's privacy rights. The Court is also satisfied that there is no reasonable alternative to sealing these documents to protect the Petitioner's privacy rights. And so, the Court GRANTS the Government's motion to seal these documents.

### V.     CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** the Petitioner's motion for compassionate release (ECF No. 135); and

(2) **GRANTS** the Government's motion to seal (ECF No. 146).

In addition, the Court **DIRECTS** the Clerk of the Court to keep and maintain ECF Nos. 147, 147-1, 147-2, 147-3 and 147-4 **UNDER SEAL**.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge